# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW TEXAS
# EL PASO DIVISION

| | |
|---|---|
| DALIA VALENCIA, | ] |
| Petitioner, | ] Case No. 3:15-CR-00228-DB |
| | ] |
| Vs. | ] |
| | ] |
| | ] |
| | ] |
| UNITED STATES OF AMERICA, | ] |
| Respondent. | ] |

## MOTION FOR RECONSIDERATION TO HIS MOTION FOR REDUCTION OF SENTENCE (COMPASSIONATE RELEASE) PURSUANT TO 18 U.S.C. 3582(C)(1)(A)

**TO:** The United States District Attorney For The Western District of Texas.

**PLEASE TAKE NOTICE** that on April 21, 2022, Dalia Valencia, ("Valencia"), acting Pro se, moves this Honorable Court for Reconsideration to previous court order respecting his motion for reduction of his sentence pursuant to 18 U.S.C § 3582(c)(1)(A)(i) (Compassionate Release.) (Doc # 1162).

Ms. Valencia invokes the intervention of this Honorable Court as new developments have raised since court's previous order that are extraordinary and compelling circumstances making her eligible for a reduction of his sentence.

Ms. Valencia respectfully invokes for the implementation of The First Step Act's "time credit" system that was implemented on January 15, 2022, which is part of the implementation of The First Step Act 2018.

## I  JURISDICTION

Section 503(b) of the First Step Act of 2018 expanded the authority of the Court to grant compassionate release. *See United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815 (M.D. Tenn. Mar. 4, 2020) (Congress's "express purpose" was "to expand the use of compassionate release sentence reductions."). This Court may reduce a sentence, upon a motion of a defendant, once the defendant has "exhausted" and shown that "extraordinary and compelling reasons" exist. 18 U.S.C. § 3582(c)(1)(A)(i). Here, the Court has jurisdiction to consider Mr. Alvarez's motion. The injustice of Mr. Alvarez's sentence is an "extraordinary and compelling" reason alone or combined with the ongoing COVID-19 pandemic and Mr. Alvarez's demonstrated rehabilitation. The Court should reduce Mr. Alvarez's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) and re-considering the § 3553(a) factors as presented next.

## II. BACKGROUND

Valencia is a 49-years old inmate serving a 180-month sentence imposed on April 19, 2017, after she pleaded guilty to racketeering and theft of government property. She is a first-time offender with no prior convictions. Her sentence was 180-months'omprisonment only because of her negotiated plea agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), with a binding recommendation that the Court impose a prison term not to exceed 180 months 'imprisonment. She is currently incarcerated at the Federal Medical Center Carswell, in Fort Worth, Texas. With a projected date of July 4, 2028.

### A. Previous Compassionate Release.

On August 21, 2020, Valencia filed her initial Motion for Reduce Sentence in this Honorable District Court (Doc # 1161). The count on August 25, 2020, DENIED her motion.

The court denied Valencia's compassionate release motion based on several factors including that Valencia has not produced medical records which supported a conclusion that she has serious and advanced illness with and end of life trajectory— or that she suffers from a medical or physical condition which substantially diminishes her ability to provide self-care in prison. See. Doc. # 1162.

### B. Valencia's New Developments

Valencia's presents that not only she has demonstrated her desire to become a better person by exhibiting an exemplary behavior during her incarceration, with an impeccable attitude to staff officers at the prisons where she has been confined, but also presents that her sentence is extremely excessive and unnecessary to achieve the purpose of punishment or rehabilitation, 15-years is an excessive sentence in other jurisdictions, considering that Mr. Valencia had an impeccable criminal record prior to this offence. Now Valencia presents additional extraordinary and compelling circumstances that have develop lately and represent a serious enough circumstance to invoke a reduction of his sentence.

1. **Medical Conditions**

Ms. Valencia is a 49-year-old female who had COVID several months previously. She had an initial echocardiogram done on 10/07/2021 after COVID, which showed acute trace paracardial effusion and an EF of 50 t0 55%, mild to moderate mitral and tricuspid regurgitation. **See Exhibit A.**

Additionally, medical history exhibits the following medical conditions prior and post COVID contraction: Health Problems (As of 12/15/2021); Hypermetropia, Astigmatism, Presbyopia, Sleep Related Bruxism, Constipation, Nonrheumatic mitral valve disorder, Leukoplakia of vulva, Disease of pericardium; Weight Loss and Unspecified family history of other specific conditions (see comments).

On December 17, 2021, Valencia complained to the Health Services Clinic that she was experiencing pain in her lower pelvic area for the past 5-months. The clinical health services encounter developed by conducting a biopsy of the area of concern that Valencia in fact presented a degree of cervical dysplasia and cervical cancer. Ms. Valencia was schedule for immediate surgery due to this medical development. Ms. Valencia underwent surgery to remove her cancer cells (lesions) and now she is under observation. Mr. Valencia presents that she now experiences

internal bleedings that are matter of concern since her place of confinement presents minimum efforts in resolving her new medical necessities.

Ms. Valencia has contracted COVID-19 and endures de post collateral effect of COVID-19. It is simply unreasonable to simply assume and ignore Ms. Valencia's post Covid medical developments and simply turn a blind eye to it when in patients who do not die from COVID-19, contracting COVID-19 can severely damage lung tissue, requiring an extensive period of rehabilitation, and in some cases, can cause a permanent loss of respiratory capacity. COVID-19 may also target the heart muscle, causing a medical condition called "myocarditis," or inflammation of the heart muscle. Myocarditis can affect the heart muscle and electrical system, reducing the heart's ability to pump. This reduction can lead to rapid or abnormal heart rhythms in the short term, and long-term heart failure that limits exercise tolerance and the ability to work.

Emerging evidence also suggests that COVID-19 can trigger an over-response of the immune system, further damaging tissues in a cytokine release syndrome that can result in widespread damage to other organs, including permanent injury to the kidneys and neurologic injury. These complications can manifest at an alarming pace. Patients can show the first symptoms of infection in as little as two days after exposure, and their condition can seriously deteriorate in as little as five days.

Even some younger and healthier people who contract COVID-19 may require supportive care, which includes supplemental oxygen, positive pressure ventilation, and in extreme cases, extracorporeal mechanical oxygenation.

Ms. Valencia is 49-years of age and has evert that she now has developed many of the above scientifically proven symptoms including issues with the heart muscle, causing a medical condition called "myocarditis," or inflammation of the heart muscle, also her cancer must not be taken lightly. Ms. Valencia upon release may

make more efficient efforts towards her medical attention by attending private Doctors and Clinics. Ms. Valencia is knowledgeable that release may only be granted upon court's proper findings. However, she prays that this court grant her relief in the form of House Confinement in order to take care of her medical spences up on being release from custody.

Mr. Valencia is knowledgeable that she can be maintain in custody even when granting Compassionate Release, and she agrees to any special condition of detention while in house confinement.

Valencia prays that this court say enough is enough allow Ms. Valencia to a different method of confinement meaning that she can be maintained in a special condition of probation and house arrest.

## III. CHANGES SINCE Ms. VALENCIA'S PREVIOUS COMPASSIONATE RELEASE FILING.

### A. Implementation of The First Step Act 2018-2022
#### 1. Time Credits

Ms. Valencia has petitioned for the implementation of The First Step Act 2018, on February 5, 2020. The BOP disposition was that she in fact was eligible for the federal time credits. However, BOP has not acted towards reducing Valencia's credits. See **Exhibit B.**

As a new development Ms. Valencia relies on the implementation of The First Step Act 2018-2022. As part of the implementation of The First Step Act, Ms. Valencia presents that she is eligible for the earned credits derived from the implementation of the First Step Act 2018-2022. Ms. Valencia moves this honorable to compel the

BOP to deduct his earnings toward her sentence. Ms. Valencia's work assignments description indicates that she has been assigned to work in one of the most critical areas in the institution. Accordingly, Mr. Valencia has earned BOP trust to work at the X-Ray clinical area as an orderly since December of 2021. Additionally, Ms. Valencia has participated in more than 40-programs including Life Connection Program which make her eligible for a reduction of her sentence of up to 12-months. See, Exhibit C.

Ms. Valencia respectfully invokes for the implementation of The Fist Step Act's "time credit" system that was implemented on January 15, 2022, which is part of the implementation of The First Step Act 2018. The Act amended 18 U.S.C Sec. 3624(b) so that their imposed sentence rather than for every year of their sentenced served. For example, this change means that an offender sentenced to 10 years in prison and who earns the maximum good time credits each year will earn 540 days of credit.

The implementation of The First Step Act of 2018-2022, provides eligible inmates the opportunity to earn 10 to 15 days of time credits for every 30 days of successful participation in Evidence Based Recidivism Reduction Programs as Productive Activities. The earned credits can be applied towards earlier placement in pre-release custody, such as RRCs and HC. In addition, at the BOP Director's discretion, up to 12 months of credit can be applied toward Supervised Release. Inmates are eligible to earn Time Credits retroactively back to Dec. 21, 2018, the date the First Step Act was enacted, subject to BOP's determination of eligibility.

Implementation will occur on a rolling basis, beginning with immediate release for inmates whose Time Credits earned exceed their days remaining to serve, are less than 12 months from release, and have a Supervised Release term. Some of these transfers have already begun, and many more will take place in the weeks and

months ahead as BOP calculates and applies time credits for eligible incarcerated individuals.

The BOP has recognized that Ms. Valencia is eligible for the earned credits derived from the implementation of the First Step Act 2018-2022. Then yet, BOP has not acted in reducing Valencia's sentence even when she has requested for it. Ms. Valencia moves this honorable to compel the BOP to deduct her earnings toward his sentence.

2. **Extraordinary and compelling reasons justify a sentence reduction.**

Ms. Valencia offers that the development and implementation of The First Step Act 2018-2022, that commenced on January 15, 2022, (Inmates are eligible to earn Time Credits retroactively), combined with her deteriorating medical condition are extraordinary and compelling reasons for a reduction in her sentence.

In Court's previous order denying Ms. Valencia's Compassionate Release motion, the court pointed that Mr. Valencia had not presented documentation in support of her argument and that there was insufficient extraordinary and compelling reasons to support the defendant's application for Compassionate Release. Now the court must recognize that Ms. Valencia does suffer from deteriorating medical conditions making her more susceptible to the severe consequences of COVID-19 should she become infected again.

To grant a compassionate release motion, the Court must find "extraordinary and compelling" reasons. Congress has never defined what constitutes "extraordinary and compelling." Instead, it delegated that to the Sentencing Commission. *See* 28 U.S.C. § 994(t). The Commission's recommendation appears in commentary to USSG § 1B1.13 (the actual policy statement just repeats the statutory language),

noting that "extraordinary and compelling reasons" may include medical conditions, age, family circumstances, and other reasons. *Id.* at app. n.1. The Commentary does not limit "other reasons," but says that it could be any "extraordinary and compelling reason other than, or in combination with" medical conditions, age, or family circumstances. *Id.* The Commission's statement was, however, formulated before the First Step Act passed, and since then it has not met to redefine or clarify what "extraordinary and compelling" might mean. *United States v. Brown*, 411 F. Supp. 3d 446, 449 n.1 (S.D. Iowa Oct. 8, 2019).

Looking at the Commission's earlier statements, courts have regarded them as helpful but anachronistic: "the scope of the old policy statement is clearly outdated and, at the very least, does not apply to the entire field of post-First Step Act motions .... Therefore, the policy statement may provide 'helpful guidance' but does not limit the Court's independent assessment of whether 'extraordinary and compelling reasons' exist under § 3582(c)(1)(A)(i)." *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *1 (E.D. Pa. Apr. 1,

2020); *see United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("I agree with the courts that have said that the Commission's existing policy statement provides helpful guidance [but] is not ultimately conclusive given the statutory change.").

Thus, courts have found that they do not have to sit on their hands in situations like these and wait for the Commission to provide greater guidance. Instead, because the "statute's text directly instructs *courts* to 'find that' extraordinary circumstances exist," the court may determine what falls within those statutory terms. *Rodriguez*, 2020 WL 1627331, at *6 (emphasis in original); *see also United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *7 (M.D.N.C. June 28, 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's

independent assessment"); *United States v. Lisi*, No. 15 CR. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020). And courts have acknowledged that "Congress's express purpose" in amending § 3582(c)(1)(A) by the First Step Act was "to expand the use of compassionate release sentence reductions." *United States v. Young*, No. 2:00-cr00002-1, 2020 WL 1047815 (M.D. Tenn. Mar. 4, 2020).

In determining what qualifies, the Court can rely on the ordinary and accepted meaning of the terms "extraordinary and compelling." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). *Black's Law Dictionary* defines "extraordinary" as "[b]eyond what is usual, customary, regular, or common." *Black's Law Dictionary* (defining Extraordinary) (11th ed. 2019). It defines "compelling need" as a "need so great that irreparable harm or injustice would result if it is not met." *Black's Law Dictionary* (defining Compelling Need) (11th ed. 2019). Taken together, they constitute the standard this Court should apply: the reason must be "beyond what is usual, customary, regular, or common," and the reasons must be "so great that irreparable harm or injustice would result if the relief is not granted." *See United States v. Cantu*, No. 1:05 CR-458-1, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019) (applying this approach with an older dictionary); *Beck*, 2019 WL 2716505, at *8 (same). Ultimately, though, the Court's determination of what constitutes "extraordinary and compelling" rests in the Court's authority and discretion "upon the court's independent finding." *Young*, 2020 WL 1047815, at *6 (collecting cases).

Ms. Valencia presents that the BOP has recognized that Ms. Valencia is eligible for The Federal Time Credit. **See Exhibit B**. Meaning that she does present extraordinary and compelling circumstances for a reduction of her sentence.

3. **Summary of the efforts by Ms. Valencia to improve himself while serving her 15-year sentence.**

Despite the injustice of her 15-year sentence, Ms. Valencia has been productive in the past near 6-years. (Sentry Report for Ms. Valencia, January 24, 2022.) **See Exhibit D.**

Because of her 15-year sentence and medical condition, Ms. Valencia has served her sentence at FMC, Carswell.

Despite being held at these facility, and despite her limited ability to attend many of the programs offered by the prison system, she has engaged in a number of productive activities. This includes completing her GED on December 21, 2017, and taking classes in more than 50 educational courses. **See Exhibit D.** [1] Also, Ms. Valencia has worked in the education, chapel and recreation area. However, must telling is the act of trust by BOP by now having her working at the X-Ray Clinical area, where only special classified inmates are allowed to work. While incarcerated for the past near 6-years, her disciplinary record has been impeccable. She has no infractions.

## VI. ARGUMENT FOR A § 3582(c)(1)(A)(i) REDUCTION

Section 503(b) of the First Step Act of 2018 expanded the authority of the Court to grant compassionate release. See United States v. Young, No. 2:00-cr-00002-1, 2020

---

[1] For the past three years, there has been no programming at many prisons due to lockdowns because of Covid-19 . As a result, Ms. Valencia has been unable to participate in any programming over the last year.

WL 1047815 (M.D. Tenn. Mar. 4, 2020) (Congress's "express purpose" was "to expand the use of compassionate release sentence reductions."). This Court may reduce a sentence, upon a motion of a defendant, once the defendant has "exhausted" and shown that "extraordinary and compelling reasons" exist. 18 U.S.C. § 3582(c)(1)(A)(i). Here, the Court has jurisdiction to consider Ms. Valencia's motion. The injustice of Ms. Valencia's sentence is an "extraordinary and compelling" reason alone or combined with the ongoing COVID-19 pandemic and Ms. Valencia's demonstrated rehabilitation. The Court should reduce Mr. Valencia's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) and reconsidering the § 3553(a) factors.

## A. The injustice of Mr. Valencia's 15-year sentence is an extraordinary and compelling reason.

Please take note that Ms. Valencia relies back to a determinative error that substantially affected her sentence. In many of her prior filing Ms. Valencia has expose that the District Court has been misinformed ab initio. Ms. Valencia increased sentence was based on PSR's misrepresentation of the facts.

Had Ms. Valencia's counsel objected to the mischaracterization, he would not have received the sentence he received. Ms. Valencia was classified as a leader or organized, and more inflammatory is the fact that in her PSI, Ms. Valencia has been exposed as a Sex Offender when she was never charged or convicted of such an horrendous crime.

As one Court previously said: "There is no justice in the mandatory sentence Defendant received." With passage of the First Step Act of 2018, and the implementation of the same active post January 15, 2022, this Court can correct that

injustice on Defendant's own motion. Since 2018, various district courts have concluded that the injustice of abiding a sentence that was required under the law before the First Step Act of 2018, but which after the First Step Act is not, can provide an extraordinary and compelling circumstance that warrants resentencing.

For example, in United States v. Maumau, the defendant – who was 20 years old when he was arrested – was sentenced based on three stacked § 924(c) charges consistent with the mandatory minimums on each of the charges. United States v. Maumau, No. 2:08-cr-00758-TC11, 2020 WL 806121, at *5 (D. Utah. Feb. 18, 2020). The Court noted that, as part of the First Step Act, Congress eliminated the injustice of stacking consecutive 25-year sentences based on multiple § 924(c)'s. Id. "When considered together, the court is inclined to find that [the defendant's] age, the length of sentence imposed, and the fact that he would not receive the same sentence if the crime occurred today all represent extraordinary and compelling grounds to reduce his sentence." Id. Similarly, in United States v. Young, the U.S. District Court for the Middle District of Tennessee held that "the drastic change effected by the First Step Act's amendment of § 924(c) constitutes an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)," when considered with the defendant's age and background. 2020 WL 1047815, at *8. In Young, the Court resentenced the defendant to 240 months, which was below the mandatory minimum that applied to the mandatory minimum applicable at the defendant's original sentence. See United States v. Young, No. 2:00-cr-00002-1 (M.D. Tenn. Mar. 4, 2020), Dkt. No. 109; see also United States v. O'Bryan, No. 96-10076-03JTM, 2020 WL 869475, *1 (D. Kan. Feb. 21, 2020) (granting reduction because of the § 924(c) sentence stacking, as defendant's 25-year sentence would now be ten); United States v. Urkevich, No. 8:08cr37, 2019 WL 6037391, *2 (D. Neb. Nov. 14, 2019) (granting reduction because of the § 924(c) sentence stacking, as defendant's 848-month sentence would be 368 months today). Congress and the

Commission have given limited guidance to whether the amendments to § 841(b)(1)(A)'s mandatory penalties are alone an "extraordinary and compelling" reason. With passage of the First Step Act, however, what is extraordinary and compelling is now left to the courts. See United States v. Fox, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) (treating "the previous BOP discretion to identify other extraordinary and compelling reasons as assigned now to the courts"). Congress's mandate in expanding the compassionate release statute was intended to allow "district judges to consider the vast variety of reasons that may be 'extraordinary and compelling,'" not to limit compassionate release to those that the BOP or the Commission had previously deemed to justify compassionate release. See Brown, No. 4:05-cr-00227, Dkt. No. 246 at *10-13. Counsel recognizes that Section 401 of the First Step Act is not retroactive. The statute does not mandate reconsideration.

If Ms. Valencia were sentenced today, she would assuredly not receive a 180-month sentence from any district court judge. Her sentence is simply a function of the time at which she was punished for her crimes. If this fundamental unfairness is not an "extraordinary and compelling" reason, then what is.

### B. Extraordinary Close Family Relationships

Ms. Valencia up on her arrest left Three minor children Each of Ms. Valencia's children was impacted and scarred by the misguided choices their mother made. Yet, not only have they overcome these barriers to find their paths in the world, but each child also accredit their mother's guidance and support as integral part of their

success. Perhaps most tellingly, each child has grown up 5-years without a mother however desiring to become a productive, contributing member of the community.

Nonetheless, Ms. Valencia has maintained uniformly close and loving relationships with her husband and his three children. Remarkably, this includes the children who were infants and could not possibly remember growing up with their mother in the home.

The three children are extremely supportive of her and they consider Ms. Valencia an important part of their lives, even though they have grown up without having her as a physical presence in their homes.

What becomes clear in the letters from Ms. Valencia's children is that they are very devoted to her. From their descriptions, Ms. Valencia has also been highly devoted to her family, always making the effort to be a positive influence in the lives of her children. For their part, the family she is still well enough, mentally and physically, to have a meaningful presence in their lives.

In addition, many friends have render Ms. Valencia support, by offering employment and by describing Mr. Valencia's character prior and during his incarceration.

See Letter for His Children, Sisters and Friends Attached. **Exhibit E.**

### C. Prayer

\_ I pray that the Judge of this Honorable Court, and the United States provide me only one opportunity, the opportunity to serve others out in the community. At my age, I no longer represent a danger to the American society, because I have rehabilitated. I also fully understand the seriousness of the crime I inflicted, but

please take into consideration that near 6-years have elapsed since 2017 when I was arrested. I have confidence that I would succeed in accomplishing my goals if granted compassionate release, I truly know that I can be a productive member of society if I am released from prison. I no longer pose any unreasonable risk of danger to society or threat to public safety if released. My exemplary record of participation in self-help, vocational and educational programs while in prison demonstrate my truly desire to rehabilitate and my realistic plans up on release. It would be unreasonable to ask for mercy, since the ideal state of the world is for justice to be served. However, there is different manners in which I can continue serving my in-custody term of judgment, I can always be maintained on Supervised release until the completion of my sentence, or as this court deems appropriate. A term of 20-years on Supervised release will also serve the purpose of justice and will not alter the judgment of the court, it will not constitute a reduction of sentence but an adjustment from 15-years in-custody, to 20-years (or what is left o my sentence) on Supervised release, which represents also an in-custody term of judgment.

I fully understand that the ideal state of the world is for justice to be served and that man would reap what he sows, then yet, I have served near 6-years of my 15-year sentence behind walls, a significant portion of any man's life considering that science has established that the average person only lives up to 75-years of age and dies, meaning that my life has been reduced to 25-years of existence.

Please Judge, hear may prayers, have mercy and exercise your delegated power in granting this significant gesture in the form of compassionate release or reduction of sentence.

## V. CONCLUSION

The Court should grant Ms. Valencia's motion for compassionate release under Section 3582(c)(1)(A)(i) and resentence Ms. Valencia to time served or any other sentence as this court deems appropriate that represents a lesser harsh sentence than the 15-year sentence that Mr. Valencia is serving now.

Date: 4-28-2022                                                           Respectfully Submitted

                                                                          *Dalia Valencia*

## CERTIFICATE OF SERVICE

I, Dalia Valencia, hereby certify under penalty of perjury, that on this April 28, 2022, I placed a copy of the foregoing MOTION FOR RECONSIDERATION TO HIS MOTION FOR REDUCTION OF SENTENCE (COMPASSIONATE RELEASE) PURSUANT TO 18 U.S.C. 3582(C)(1)(A), in a Mailbox at the FMC Carswell TX., With sufficient prepaid postage. A copy of the foregoing motion was served to the Western District Texas U.S. District Attorney's office.

                                                                          Respectfully Submitted

                                                                          *Dalia Valencia*