# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | **SEALED** |
| v. | § | **EP-15-CR-228-DB-10** |
| | § | |
| DALIA VALENCIA. | § | |

## ORDER DENYING DEFENDANT'S MOTION TO RECONSIDER

Dalia Valencia, Register Number 59005-380, moves the Court to reconsider its order denying her motion for a reduction in her sentence pursuant to 18 U.S.C. § 3582(c)(2)(A)(i). Def.'s Mot. to Reconsider, ECF No. 1178. The United States of America (the Government) opposes the motion. Gov't's Resp., ECF No. 1184. The Court, after due consideration, denies Valencia's motion.

## BACKGROUND

Valencia is a 50-year-old inmate serving a 180-month sentence imposed on April 19, 2017, after she pled guilty to racketeering and theft of government property. J. Crim. Case, ECF No. 1012. She is currently incarcerated at the Federal Medical Center Carswell, in Fort Worth, Texas. See www.bop.gov/inmateloc (search for Reg. No. 59005-380, last visited May 23, 2022). Her projected release date is July 4, 2028. Id.

Valencia actively participated in a major criminal enterprise based in El Paso, Texas. Presentence Investigation Report ¶ 23, ECF No. 999. She maintained control over the enterprise's money derived from drug trafficking and kidnapping. Id. at ¶ 135. She laundered the funds through a shoe store's bank accounts and real estate transactions. Id. She paid drug couriers and directed other participants on the disposition of illegally obtained funds. Id. Based on her participation in the enterprise, she was accountable for 37,648 kilograms of marijuana. Id.

She helped plan, coordinate, and execute at least ten kidnappings. Id. She even provided names of possible kidnap victims—including the name of a man she was dating. Id.

Valencia also received social security survivor's benefits after her husband's death on July 4, 2007. Plea Agreement 26, ECF No. 670. But she remarried on July 6, 2012. Id. Had she provided the Social Security Administration with information concerning her remarriage, her benefits would have ceased. Id. So, from August 2012 through July 2015, she received $49,987 in social security survivor's benefits to which she was not entitled. Id.

Valencia pled guilty, pursuant to a sealed plea agreement, to racketeering conspiracy and theft of government property. Presentence Investigation Report ¶ 12, ECF No. 999; Fourth Superseding Indictment, ECF No. 473; Felony Information, ECF No. 666; Plea Agreement, ECF No. 670. Based upon a total offense level of 43 and criminal history category I, her guideline sentencing range was life in prison. Presentence Investigation Report ¶ 232. But she obtained the Government's promise to make a binding sentencing recommendation, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that the Court impose a prison term of not more than 180 months' imprisonment. Plea Agreement at 4–5. As a result, she was sentenced to a term of 180 months' imprisonment. J. Crim. Case, ECF No. 1012. She did not appeal.

In her motion to reduce her sentence, Valencia claimed "she [was] exposed to imminent risk of contracting COVID-19 at her place of confinement." Def.'s Mot. to Reduce Sentence, ECF No. 1161 at 7. Her medical records indicated she had an adjustment disorder, mixed anxiety, and depressed mood—but not a terminal illness or a serious medical condition that substantially diminished her ability to provide self-care. Id., Ex. B, ECF No. 1147-2 at 6.

The Court denied Valencia's motion. Order 7, ECF No. 1162. It found Valencia's medical problems—when combined with the threat of COVID-19—fell short of the extreme

2

conditions a prisoner had to normally exhibit to merit a compassionate release. Id. at 7. It further found she did not produce prison records which might establish that she was not a danger to the safety of others. Id. It also found "that, given the seriousness of Valencia's offenses, releasing her from prison now—even under supervision—would do nothing to accomplish the sentencing goals of affording 'adequate deterrence to criminal conduct.' Indeed, after re-weighing the § 3553(a) sentencing factors, the Court [found] that Valencia's 180-month sentence [was] sufficient—but not greater than necessary—to comply with the basic aims of sentencing." Id. (citing 18 U.S.C. § 3582). Consequently, it concluded Valencia had not met her burden of showing that she qualified for compassionate release for extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A). Id.

Valencia now asks the Court to reconsider her motion. Def.'s Mot. to Reconsider, ECF No. 1178. She reports she contracted COVID-19 and now suffers from "acute trace paracardial effusion and an EF of 50 to 55% [and] mild to moderate mitral and tricuspid regurgitation." Id. at 4 (citing Ex. A). She also claims she suffers from hypermetropia (farsightedness), astigmatism (the incorrect curvature of the cornea), sleep-related bruxism (grinding or clenching of teeth), constipation, nonrheumatic mitral valve disorder (abnormalities of a valve in the heart that are not caused by or related to rheumatism), vulva leukoplakia (white patches on the internal surfaces of vulvar), disease of the pericardium (disease of the membrane enclosing the heart), weight loss, and a family history of other conditions. Id. She further claims she recently underwent a medical procedure for cervical cancer. Id. She adds she has maintained a close relationship with her three minor children. Id. at 14. She asks the Court to grant her an immediate release from prison. Id. at 17. She additionally asks the Court to order the Bureau of Prisons to grant her additional credit pursuant to the First Step Act for her time served. Id. at 6.

3

Valencia attaches copies of her medical records as exhibits. Exhibit A includes a cardiology report from January 7, 2022, which concludes no additional treatment is necessary:

> 1. There is no evidence of significant cardiac sequelae from COVID-19. There is no evidence of cardiomyopathy. The valvular Insufficiencies are not clinically relevant and not related.

> 2. At this time no additional treatment is indicated and no routine follow-up is needed from a cardiac standpoint.

Id., Ex. A at 3. It also confirms Valencia has been diagnosed with hypermetropia, astigmatism, sleep-related bruxism, constipation, nonrheumatic mitral valve disorder, vulva leukoplakia, disease of the pericardium. Id. at 4. It further shows she reported lower pelvic pain, underwent a vaginal biopsy on December 17, 2021, and was referred to a gynecologist. Id. at 6. But it does not support her claim she has been diagnosed with cancer.

## APPLICABLE LAW

Motions for reconsideration "are nowhere explicitly authorized in the Federal Rules of Criminal Procedure." United States v. Lewis, 921 F.2d 563, 564 (5th Cir. 1991) (citing United States v. Cook, 670 F.2d 46, 48 (5th Cir.1982). Nevertheless, courts have "continuing jurisdiction over criminal cases and are free to reconsider [their] earlier decisions." United States v. Scott, 524 F.2d 465, 467 (5th Cir. 1975). Hence, motions to reconsider in a criminal case are a "recognized legitimate procedural device." Lewis, 921 F.2d at 564. Motions to reconsider in criminal proceedings are "treated just like [similar] motions in civil suits." United States v. Rollins, 607 F.3d 500, 502 (7th Cir. 2010).

Federal Rule or Civil Procedure 60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time

4

to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b).

## ANALYSIS

Valencia suggests her recent diagnoses of "[p]ericardial effusion, vascular disease possible due to COVID" and cervical cancer are new evidence which provide the extraordinary and compelling reasons for a reduction in her sentence. Def.'s Mot. to Reconsider 4, ECF No. 1178; Id., Ex. A at 4, ECF No. 1178.

### A. Authority of a Court to Modify a Sentence

A court may modify a sentence only in the "limited number of circumstances" set out in 18 U.S.C. § 3582. United States v. Bridges, 116 F.3d 1110, 1112 (5th Cir. 1997). These circumstances include when a court finds "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). But before modifying a sentence, a court must always (1) re-consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and (2) determine whether a reduction is consistent with policy statements issued by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A); Bridges, 116 F.3d at 1112.

The § 3553(a) sentencing factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for the applicable category of offense or defendant; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records; and (7) the

5

need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

The policy statement issued by the United States Sentencing Commission—found at Sentencing Guideline § 1B1.13—explains a court may reduce a term of imprisonment for compassionate reasons if it finds:

> (1) (A) extraordinary and compelling reasons warrant the reduction;
>
> . . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018).

The Sentencing Commission has not issued a new policy statement since the enactment of the First Step Act. "[T]he context of the policy statement shows that it applies only to motions filed by the BOP." United States v. Shkambi, 993 F.3d 388, 392 (5th Cir. 2021). Consequently, "neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582. The district court . . . is bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a)." Id. at 393.

"Although not dispositive, the commentary to . . . § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." United States v. Thompson, 984 F.3d 431, 433 (5th Cir. 2021) (citing U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1(A)–(D)). The commentary allows "Medical Condition of the Defendant" may provide an extraordinary and compelling reason for compassionate release. Id. But the commentary describes only two medical conditions which might warrant early release: (1) where "[t]he defendant is suffering from a terminal illness," and (2) where the

6

defendant is suffering from a serious medical or physical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Id.

In all cases, "'the defendant has the burden to show circumstances meeting the test for compassionate release.'" United States v. Ennis, No. EP-02-CR-1430-PRM-1, 2020 WL 2513109, at *4 (W.D. Tex. May 14, 2020) (quoting United States v. Stowe, No. CR H-11-803 (1), 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019)).

### B. Sentencing Factors

Valencia was a top associate in a criminal enterprise engaged in drug trafficking, money laundering, and kidnapping. Presentence Investigation Report ¶ 23, ECF No. 999. She was held accountable for 37,648 kilograms of marijuana based on her participation in the enterprise. Id. at ¶ 135. She was engaged in laundering illicit funds through a shoe store's bank accounts and real estate transactions. Id. She was involved in paying drug couriers and directing other participants in the enterprise on the disposition of illegally obtained funds. Id. She was immersed in planning, coordinating, and executing at least ten kidnappings. Id. She also received $49,987 in social security survivor's benefits to which she was not entitled. Id. Based upon a total offense level of 43 and criminal history category I, her guideline sentencing range was life. Presentence Investigation Report ¶ 232. But she obtained the Government's promise in the plea agreement to make a binding sentencing recommendation, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that the Court impose a prison term of not more than 180 months' imprisonment. Plea Agreement at 4–5. So, she was sentenced to a term of 180 months' imprisonment. J. Crim. Case, ECF No. 1012.

The Court finds—given the nature, circumstances, and seriousness of her offenses—that

releasing Valencia from prison would do nothing to accomplish the sentencing goal of affording "adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(1). Moreover, considering Valencia's age and past criminal conduct—which suggests recidivism is likely—there is a need to deter her from engaging in future crimes with a view toward protecting the public. Id. § 3553(a)(2)(B)–(C). Indeed, after re-weighing the § 3553(a) sentencing factors, the Court finds that Valencia's sentence is sufficient to comply with the basic aims of sentencing. Id. § 3553(a)(2).

### C. Medical Condition

Valencia provides new evidence that she contracted COVID-19 and now suffers from "acute trace paracardial effusion and an EF of 50 to 55% [and] mild to moderate mitral and tricuspid regurgitation." Def.'s Mot. to Reconsider 4, ECF No. 1178. Her medical records confirm this. Gov't's Resp., Ex. B, ECF No. 1184-2. But her cardiologist noted on January 7, 2022, that no further treatment was necessary:

IMPRESSIONS:

1. Trace paracardial effusion

2. Mild mitral and tricuspid regurgitation

3. Physiological bradycardia from exercise training

4. Post COVID-19 status

RECOMMENDATIONS:

1. There is no evidence of significant cardiac sequelae from COVID-19. There is no evidence of cardiomyopathy. The valvular insufficiencies are not clinically relevant and not related.

2. At this time no additional treatment is indicated and no routine follow-up is needed from a cardiac standpoint.

8

Id. at 250. And her gastroenterologist reported on April 18, 2022, that she was stable:

> [Valencia] had a history of small pericardial effusion. This has been evaluated by cardiology and felt to be stable. She had an echocardiogram on 10/07/2021 revealing a left ventricular ejection fraction of 50 to 55%. She had mild to moderate mitral regurgitation and tricuspid regurgitation. She had a repeat echocardiogram on 12/09/2021 with ejection fraction of 55 to 60% and a trace amount of pericardial effusion, which has been stable. She apparently has had no prior heart attack or congestive heart failure. She is being followed by cardiology.

Id. at 217.

Valencia further claims she has new evidence that she "underwent surgery to remove her cancer cells (lesions)," and she is "now . . . under supervision." Def.'s Mot. to Reconsider 4, ECF No. 1178. However, her medical records do not support her cancer claim. Instead, they show that "[s]he had a punch biopsy done that showed differentiated-type VIN [but] no definitive evidence of invasive carcinoma." Gov't's Resp., Ex. B at 221, ECF No. 1184-2. She was told "that if left untreated," a differentiated-type VIN "carries a higher risk of developing into malignancy." Id. at 233.

Valencia's newly discovered evidence does not support a conclusion that she has a serious and advanced illness with an end-of-life trajectory—or that she suffers from a medical or physical condition which substantially diminishes her ability to provide self-care in prison. She has not claimed that she is terminally ill, and her medical problems fall short of the extreme conditions a prisoner must normally exhibit to merit a compassionate release. Her records show she is receiving care for medical needs.

Furthermore, Valencia has still not produced prison records which might establish that she is not a danger to the safety of others.

Consequently, the Court finds Valencia has not met her burden of showing that she

qualifies for compassionate release for extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A). Her sentence will accordingly not be reduced to time served. Here motion to reconsider will be denied.

## CONCLUSION AND ORDER

Therefore, after considering Valencia's new evidence, Court concludes that she has still not met her burden of showing that she qualifies for compassionate release for extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A). Accordingly, Valencia's "Motion for Reconsideration to His [sic] Motion for Reduction of Sentence (Compassionate Release) Pursuant to 18 U.S.C. § 3582(c)(1)(A)" (ECF No. 1178) is **DENIED**.

SIGNED this ___16___ day of June 2022.

DAVID BRIONES
**SENIOR UNITED STATES DISTRICT JUDGE**